■ In the Matter of LAFAYETTE STORAGE & MOVING CORPORATION, Respondent. THOMAS F. HARTNETT, as Commissioner of Labor, Appellant.—Mikoll, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed September 19, 1988, which adhered to its prior Board decision ruling that Lafayette Storage & Moving Corporation had been improperly assessed for additional unemployment insurance contributions.

The Commissioner of Labor challenged a finding by an Administrative Law Judge (hereinafter ALJ) that drivers who own their own tractors were not employees of Lafayette

Storage & Moving Corporation (hereinafter Lafayette). The Commissioner claimed that the decision lacked substantial evidence and that the finding was inconsistent with a prior decision by the Unemployment Insurance Appeal Board involving essentially similar facts. The Board affirmed the ALJ's determination and this appeal by the Commissioner ensued.

Lafayette is a franchise agent for Atlas Van Lines, Inc. (hereinafter Atlas), a nationwide moving company. Customers requiring long distance interstate moving services make arrangements with Lafayette which turns the information over to Atlas. Lafayette contends that the drivers involved herein are independent contractors based on the following circumstances. The drivers own their own tractors and some own their trailers as well, and work exclusively on long distance interstate moves. The drivers are secured by word of mouth or by advertisements placed in trade journals by Atlas. It is Atlas who hires the drivers for a delivery and has an agreement with them. The drivers deal only with Atlas dispatchers. Atlas handles the dispatching and monitoring of long distance interstate moves.

If Atlas approved of the hiring of a driver, Lafayette would then enter into an agreement with each driver. The agreement provided that the driver owned the tractor and was responsible for all expenses in operating it. The driver received 50% or more of the line haul revenue and 100% of certain other charges per moving job. The agreement was for a specified term, renewable automatically, unless canceled by the driver or Lafayette. Each driver also signed an "indemnification agreement" agreeing to indemnify Lafayette from workers' compensation claims arising in favor of the driver as a result of the work provided by the driver at Lafayette's request. Lafayette provided no training and did not supervise the drivers or prescribe any rules of operation. The drivers contacted the customers and determined delivery dates themselves. They were free to reject jobs and were not required to call Lafayette every day. Drivers were paid a percentage of the fee charged a customer and the percentage was agreed upon between the driver and Lafayette. The drivers used an Atlas identification number on their vehicles as required by Federal law. Once a job was accepted, drivers called Atlas daily. They were free to haul additional goods even while they hauled goods for Atlas. Each driver was responsible for repairs to his vehicle, fuel and tolls. Drivers did not wear a uniform. No logo of Lafayette appeared on their tractors. No

taxes were withheld and each driver had his own workers' compensation insurance.

The Commissioner contends that the essential facts herein are similar to the facts in a prior Board decision handed down in September 1982 and that the Board, in conformity with *Matter of Field Delivery Serv. (Roberts)* (66 NY2d 516), should have reached a consistent decision or expressed a reason for its departure. We disagree. The facts herein are not essentially similar to the Board's decision in September 1982, nor to *Matter of Lincoln Stor. (Hartnett)* (156 AD2d 832 [decided herewith]). No explanation by the Board was warranted. Unlike the situation herein, the drivers in *Lincoln* and in the Board's September 1982 decision were subject to substantial control, e.g., they signed agreements for hire with the local agent, they were required to paint their tractors according to Atlas requirements, the tractors bore the Atlas name, the drivers could not work for others, they were required by Atlas to keep daily logs and they were required to wear Atlas uniforms. In contrast to the facts in this case, these were all indicia of an employer-employee relationship. Therefore, the Board's decision should be affirmed.

Decision affirmed, without costs. Casey, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.